# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES AUSTIN PARKS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DARYL G. ADAMS, et al.,<br><br>　　　　　Defendants.<br>_____/ | CASE NO. 1:08-cv-01628-LJO-SKO PC<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING THAT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE PARTIALLY GRANTED<br><br>(Doc. 38)<br><br>OBJECTIONS DUE WITHIN 30 DAYS |

Plaintiff Charles Austin Parks ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. On August 23, 2010, Defendants Braswell, Young, Pighting, Alexander, and Hieng ("Defendants") filed a motion for summary judgment. (Doc. #38.) Plaintiff filed an opposition on November 12, 2010. (Doc. #40.) Defendants have not filed a reply to Plaintiff's opposition.

**I.　Background**

　　**A.　Plaintiff's Claims**

This action proceeds on Plaintiff's April 27, 2009 first amended complaint. (Doc. #9.) Plaintiff alleges that he was attacked by a correctional officer at the California State Prison in Corcoran, California ("CSP-Corcoran") on January 26, 2008.

According to Plaintiff's allegations, Plaintiff was escorted to his housing unit when Defendant F.E. Braswell called Plaintiff a "Homosexual fag in the ass." (Compl. 7:14-20, ECF No.

///

9.)[1] When Plaintiff arrived at his housing unit, Braswell asked for Plaintiff's cell number. Plaintiff ignored Braswell and Defendant W. Young told Braswell that Plaintiff was in Cell #47. Braswell, who was angry because Plaintiff had ignored him, told Plaintiff that he should answer when he is asked a question. When Plaintiff's cell was opened, Braswell allegedly shoved Plaintiff in the back and threw a hard-boiled egg at Plaintiff.

After Plaintiff's cell door closed, Plaintiff asked Young to summon a sergeant. Braswell then ordered an officer in the control tower to open Plaintiff's cell door. Braswell ran into the cell and slammed Plaintiff into the concrete bunk and attacked him. Plaintiff alleges that Braswell assaulted him "by applying his body weight and running his arms through the Plaintiff's legs and around his neck bending the Plaintiff's neck while threatening,[sic] Plaintiff that when he talk I'd better answer hin[sic] and, I'd better be glad he does'nt[sic] work in here (5) five days." (Compl. 9:19-24, ECF No. 9.) Braswell then lifted Plaintiff's body and drove it into the concrete bunk. Plaintiff contends that Young failed to take any action to intervene.

After the attack, Braswell ordered Young and another officer to retrieve "the triangle handcuff detention device." (Compl. 10:12-14, ECF No. 9.) Plaintiff alleges that Braswell intentionally hurt Plaintiff by yanking the device while it was connected to Plaintiff.

Plaintiff claims that Defendants Braswell, Young, T. Hieng, K. Alexander, F. Pighting, and John Doe failed to report the incident or notify a supervisor about the use of force. Plaintiff contends that the defendants conspired to conceal the incident. Plaintiff claims Young, Hieng, Alexander, and Pighting stood by and watched during the assault and failed to take any action to intervene. Plaintiff claims Defendants violated Plaintiff's rights under the Eighth Amendment.

**B.     Defendants' Motion for Summary Judgment**

Defendants argue that they are entitled to summary judgment because Plaintiff cannot establish that they violated his Eighth Amendment rights. Defendants further argue that they are entitled to qualified immunity. Defendants' motion is supported by declarations from F. Braswell,

///

---

[1] Citations to Plaintiff's complaint refer to the page numbers as the document is electronically filed. Plaintiff's page numbers do not align with the electronic page numbers.

1  F. Pighting, K. Alexander, M. Calhoun, T. Hieng, and W. Young, as well as copies of prison
2  regulations and prison reports related to the incidents described in Plaintiff's complaint.
3      Defendants' motion for summary judgment is premised on their version of the facts, which
4  is materially different from Plaintiff's version of the facts. Defendants concede that they all worked
5  in the Building 4A-1R SHU unit where Plaintiff was housed during the events described in
6  Plaintiff's complaint. Defendants contend that Braswell and Hieng escorted Plaintiff to his cell.
7  When Plaintiff stepped into his cell with his hands cuffed behind him, Braswell signaled the control
8  booth officer, Defendant Pighting, to close the cell door. Plaintiff stated that he would not relinquish
9  his handcuffs and attempted to squat down to slip his handcuffs to the front of his body. Defendant
10 Alexander then asked Braswell and Heing if they needed any assistance. When Alexander arrived,
11 Plaintiff was bent over and had his cuffs below his knees in an attempt to slip the cuffs to the front
12 of his body.
13     Defendants argue that inmates pose a threat to prison safety when they slip their handcuffs
14 to the front of their bodies because they can then use the handcuffs as weapons against staff and
15 other inmates. Braswell reached into Plaintiff's cell and grabbed Plaintiff's left forearm to prevent
16 him from slipping his cuffs. Braswell then asked Alexander to obtain a lanyard chain to help remove
17 Plaintiff's handcuffs. Alexander returned with the lanyard device while Braswell held Plaintiff's
18 forearm. After securing the lanyard to Plaintiff's handcuffs, Braswell motioned to Pighting to close
19 the cell door. After the cell door closed, Braswell, Hieng, and Alexander removed Plaintiff's
20 handcuffs through the food port while holding onto the lanyard. Plaintiff did not resist and Braswell,
21 Hieng, and Alexander left Plaintiff's cell. Defendants allege that Plaintiff did not have any injuries
22 when Braswell, Hieng, and Alexander left.
23     Defendants argue that Defendant Young had no direct interaction with Plaintiff during the
24 events in question. Defendants also allege that Pighting was in the control booth and did not observe
25 any use of force during the events in question and had no direct interaction with any inmates.
26     Defendants further allege that Plaintiff covered up his cell window and demanded to talk to
27 a sergeant. Sergeant Calhoun arrived and Plaintiff told him that Braswell threw a hard-boiled egg
28 at him and pushed him into his cell. Defendants argue that Plaintiff's cell window was covered for

more than an hour and no officer could see what was happening inside the cell. Defendants contend that Plaintiff's injuries were self-inflicted during the time his cell window was covered.

Defendants argue that they are entitled to summary judgment because they did not use excessive force against Plaintiff. Defendants contend that any force used was justified because Plaintiff attempted to slip his handcuffs and would have posed a threat to prison security. Defendants further contend that Plaintiff's injuries were self-inflicted. Defendants also argue that there is no evidence to suggest that Defendants Hieng, Alexander, Young, or Pighting failed to protect Plaintiff from any serious threat of harm.

Finally, Defendants argue that they are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights, and to the extent that they violated Plaintiff's constitutional rights, such rights were not clearly established at the time of the incidents in question.

## II.     Summary Judgment Legal Standards

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322. "A moving party without the ultimate burden of persuasion at trial-usually, but not always, a defendant-has both the initial burden of production and the ultimate burden of persuasion on a motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1102 (9th Cir. 2000). "In order to carry its burden of production, the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." Id.

1    If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Federal Rule of Civil Procedure 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Federal Rule of Civil Procedure 56(c). The evidence of the opposing party is to be believed, Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the opposing party, Matsushita, 475 U.S. at 587 (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).

///

Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III. Discussion

#### A. Sufficiency of Plaintiff's Evidence

To prevail on their motion for summary judgment, Defendants must demonstrate that there is no genuine issue of material fact with respect to Plaintiff's Eighth Amendment claims and that Defendants are entitled to judgment as a matter of law.

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)).

The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective "sufficiently culpable state of mind" requirement is met when a prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he or she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Where prison officials are accused of using excessive physical force, the issue is "'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" Hudson v. McMillian, 503 U.S. 1, 6 (1992) (quoting Whitley v. Albers,

1  475 U.S. 312, 320-321 (1986)).  Factors relevant to the analysis are the need for the application of
2  force, the relationship between the need and the amount of force that was used and the extent of the
3  injury inflicted.  Whitley, 475 U.S. at 321.  Other factors to be considered are the extent of the threat
4  to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of
5  the facts known to them, and any efforts made to temper the severity of a forceful response.  Id.  The
6  infliction of pain in the course of a prison security measure "does not amount to cruel and unusual
7  punishment simply because it may appear in retrospect that the degree of force authorized or applied
8  was unreasonable, and hence unnecessary."  Id. at 319.  Prison administrators "should be accorded
9  wide-ranging deference in the adoption and execution of policies and practices that in their judgment
10 are needed to preserve internal order and discipline and to maintain institutional security."  Id. at 321-
11 322 (quoting Bell v. Wolfish, 441 U.S. 520, 547 (1970)).

12         Defendants claim there are no genuine issues of material fact.  However, Defendants' version
13 of the facts differs substantially from Plaintiff's version of the facts.  Defendants allege that Plaintiff
14 appeared to make an attempt to slip his cuffs, and Defendants only used force to restrain Plaintiff
15 and remove his cuffs using a lanyard device.  Plaintiff alleges that Defendant Braswell attacked
16 Plaintiff while he was restrained in his cell.  Whether the factual dispute is genuine turns on the issue
17 of whether Plaintiff has sufficient evidence to support his version of the facts.  See Federal Rule of
18 Civil Procedure 56(c); Matsushita, 475 U.S. at 586 n.11.

19         Plaintiff's complaint and opposition are both verified and may be used as evidence in support
20 of his opposition.  See Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004) ("because [the plaintiff]
21 is pro se, we must consider as evidence in his opposition to summary judgment all of Jones's
22 contentions offered in motions and pleadings, where such contentions are based on personal
23 knowledge and set forth facts that would be admissible in evidence, and where [the plaintiff] attested
24 under penalty of perjury that the contents of the motions or pleadings are true and correct.").
25 Accordingly, to the extent that Plaintiff's complaint and opposition contain factual allegations that
26 are based on Plaintiff's personal knowledge and would be admissible as evidence, such allegations
27 would be sufficient to establish a genuine issue of material fact.
28 ///

Plaintiff's complaint alleges that Defendant Braswell shoved Plaintiff into his cell and threw a hard-boiled egg at Plaintiff. Later, Braswell allegedly rushed into Plaintiff's cell and attacked him. Plaintiff alleges that Young, Hieng, Alexander, Pighting, and John Doe #1 failed to take any action to prevent the assault from occurring. These allegations are reiterated in Plaintiff's verified opposition. Plaintiff's allegations are facts that would be within his personal knowledge and would therefore be admissible at trial.

Plaintiff has sufficient evidence to establish a genuine issue of material fact with respect to his claim against Defendant Braswell. Plaintiff claims that Braswell pushed Plaintiff into his cell and threw a hard-boiled egg at him. Later, Braswell attacked Plaintiff while he was defenseless. Plaintiff also alleges in his complaint that Braswell used excessive force for the purpose of causing pain by tugging on the lanyard device connected to Plaintiff's handcuffs.

Plaintiff has also alleged sufficient facts to state claims against Defendants Young, Pighting, and Alexander. Plaintiff has alleged that Young stood next to Braswell when Braswell shoved Plaintiff into his cell and threw a hard-boiled egg at Plaintiff. Plaintiff alleges that Pighting opened Plaintiff's cell at Braswell's command and enabled Braswell to attack Plaintiff. Although there is not much evidence to suggest that Pighting knew that Braswell was going to rush into the cell and attack Plaintiff, the Court finds that, given the circumstances, a reasonable fact-finder could conclude that Pighting was aware of a risk of harm because Braswell was clearly angry at Plaintiff. Plaintiff claims Alexander arrived at Plaintiff's cell while Braswell was inside attacking Plaintiff, but merely stood there and watched while Braswell attacked Plaintiff. Plaintiff alleges that he never attempted to slip his handcuffs and therefore there was no penological need for the use of force. Accordingly, Plaintiff has submitted sufficient evidence to establish a genuine issue of material fact with respect to his claims that Alexander, Pighting, and Young deliberately ignored a serious threat of harm to Plaintiff by observing or helping Braswell attack Plaintiff.

However, there is no evidence in the record regarding Hieng's liability. Plaintiff alleges that Hieng was not "present at Plaintiff's cell when the initial incident's[sic] occured[sic] as the only two defendant's[sic] that were present were defendant's[sic] F. Braswell and W. Young." (Pl.'s Opp'n to Defendants[sic] Mot. for Summ. J. 8:5-9, ECF No. 40.) Plaintiff alleges that Hieng attempted to

cover up the assault, but it is unclear whether Hieng could have done anything to prevent the assault from occurring because Plaintiff alleges that Hieng was not present during the assault.

Plaintiff also alleges that Hieng assisted Braswell in applying the lanyard device. However, Plaintiff's only argument is that Hieng and the other defendants failed to follow prison policies because they were not authorized to use the lanyard device and failed to contact a supervisor about their use of the lanyard device. Even if their use of the lanyard device violated prison policies or regulations, the violation of prison policy is not in and of itself actionable under Section 1983. See Sweaney v. Ada County, Idaho, 119 F.3d 1385, 1391 (9th Cir. 1997) ("'To the extent that the violation of a state law amounts to the deprivation of a state-created interest that reaches beyond that guaranteed by the federal Constitution, Section 1983 offers no redress'") (quoting Lovell v. Poway Unified School District, 90 F.3d 367, 370 (9th Cir. 1996)); Sandin v. Conner, 515 U.S 472, 482 (1995) (no constitutionally protected liberty interest in prison regulations phrased in mandatory terms); Bostic v. Carlson, 884 F.2d 1267, 1270 (9th Cir. 1989) (prison's failure to meet guidelines or follow regulations "would not alone constitute a denial of due process") (dictum).

Plaintiff and Defendants dispute whether the use of the lanyard device was authorized under prison regulations. However, the central inquiry with respect to Plaintiff's Eighth Amendment claims is not whether the use of the lanyard device was authorized; the central inquiry is whether the use of the lanyard device constituted excessive force or a deliberate disregard toward a substantial risk to Plaintiff's health and safety. Plaintiff has failed to set forth any allegation or evidence explaining how the application of the lanyard device was anything more than an insignificant inconvenience. Accordingly, the Court finds that there is no evidence that Defendant Hieng's actions rose to the level of an Eighth Amendment violation. The Court will recommend that summary judgment be granted in favor of Defendant Hieng.

**B.     Defendants Are Not Entitled to Qualified Immunity**

Defendants argue that they are entitled to qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Pearson v. Callahan, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457

9

U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error 'is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Id. (quoting Groh v. Ramirez, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)). Questions regarding qualified immunity should be resolved at the earliest possible stage in litigation because qualified immunity serves as an immunity from suit rather than a mere defense to liability. Id.

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court mandated a two-step sequence for resolving claims of qualified immunity. First, a court must decide whether the facts alleged by a plaintiff set forth a violation of a constitutional right. Saucier, 533 U.S. at 201. Second, if the plaintiff has satisfied the first step, the court must decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. Id. If the defendant did not violate a clearly established constitutional right, the defendant is entitled to qualified immunity from plaintiff's claims. Pearson, 129 S. Ct. at 816 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). However, the Supreme Court has since held that the Saucier sequence is not mandatory in all cases and courts may resolve the "clearly established" question first when the Saucier sequence would result in a "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case." Id. at 818.

Defendants contend that they are entitled to qualified immunity because they did not violate Plaintiff's constitutional rights. However, for the purposes of evaluating Defendants' assertion of qualified immunity, the Court must look at the facts in the light most favorable to Plaintiff. Saucier, 533 U.S. at 201. Viewing the facts in the light most favorable to Plaintiff, they set forth a violation of Plaintiff's constitution rights by Defendants Braswell, Alexander, Pighting, and Young. See discussion supra Part III.A.

The Court also finds that the right in question was clearly established at the time of Defendants' actions. The alleged injuries occurred in January 2008. By that time, Plaintiff's right to be free from the use of excessive force by correctional officers was clearly established by Hudson v. McMillian, 503 U.S. 1 (1992), and Whitley v. Albers, 475 U.S. 312 (1986). The Court also finds that it was clearly established that a correctional officer cannot stand and watch as one of their

colleagues violates a prisoners' constitutional rights. See Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (prison official may be liable under Section 1983 for unconstitutional acts of others if he or she "knew of the violations and failed to act to prevent them"); see also George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("A guard who stands and watches while another guard beats a prisoner violates the Constitution"). Accordingly, the Court finds that Defendants are not entitled to qualified immunity.

**IV.     Conclusion and Recommendation**

The Court finds that Plaintiff has presented sufficient evidence to establish genuine issues of material fact with respect to Plaintiff's claims against Defendants Braswell, Young, Alexander, and Pighting. Plaintiff has failed to present sufficient evidence to establish a genuine issue of material fact with respect to his claim against Defendant Hieng. Accordingly, the Court will recommend that Defendants' motion for summary judgment be partially granted.

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment be PARTIALLY GRANTED;

2. Defendants' motion for summary judgment be DENIED as to Plaintiff's claims against Defendants Braswell, Young, Pighting, and Alexander; and

3. Defendants' motion for summary judgment be GRANTED as to Plaintiff's claims against Defendant Hieng.

These Findings and Recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1). Within thirty (30) days after being served with these Findings and Recommendations, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within ten (10) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District

///
///
///

Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     January 13, 2011                          /s/ Sheila K. Oberto**
UNITED STATES MAGISTRATE JUDGE